UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

      Plaintiff,

v.                                                              Case No.  10-20666

ARAMAIS MOLOIAN,                        Paul D. Borman
                                                               United States District Judge
      Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION FOR SANCTIONS FOR GOVERNMENT SPOLIATION OF EVIDENCE

On November 15, 2007, inspectors for the Michigan Department of Environmental Quality (MDEQ), accompanied by an officer of the federal Environmental Protection Agency (EPA), Brian Kelly, who was the on-scene coordinator for the EPA's Energy Response Branch, took fourteen (14) samples from various barrels/drums/totes at Defendant's Chem-Serve facility in Detroit.  This was the MDEQ's third on-scene inspection at Chem-Serve, but the first at which samples were taken, and the first at which an EPA officer was present. Each barrel/drum/tote from which a sample was taken was clearly marked with a grease pen.

A total of 14 samples were taken on November 15, 2007.  RTI Testing, to whom the samples were sent for testing, issued a report to the EPA on November 30, 2007, listing 6 of the 14 samples as corrosive.  RTI disposed of the samples on December 29, 2007, pursuant to its standard operating procedure.

On January 29 and 30, 2008, the EPA (without MDEQ) executed a search warrant at Chem-Serve and took 35 samples; 33 tested positive as corrosive. These samples were not disposed of, and were provided to Defendant for his own testing.

On March 26, 2008, the MDEQ closed the Chem-Serve facility in Detroit.

On November 9, 2010, the government secured an indictment against Defendant Aramais Moloian, the owner of Chem-Serve, charging him with three criminal count violations of the Resource Conservation and Recovery Act, 42 U.S.C. § 6901, *et seq.* (RCRA), specifically charging violations of 42 U.S.C. § 6928(d)(2)(A).

On July 21, 2011, Defendant filed the instant Motion for Sanctions for Government Spoliation of Evidence; to wit, the destruction of the chemical samples taken from Chem-Serve's "location at 9501 and 9505 Copland in Detroit, Michigan . . . . and tested by Weston Solutions, Inc./RTI Laboratories in November-December 2007." (Defendant's Motion for Sanctions, p. 1.)

Despite the fact that the government-hired outside contractor, Weston Solutions and RTI Laboratories, destroyed the samples on December 29, 2007, one month after testing – not at the direction of the EPA, or even then known to the EPA; it was RTI's procedure to destroy samples one month after issuing a testing report – the facts establish that Defendant had the opportunity to secure like-samples of the MDEQ samples, from the clearly-marked barrels/drums/totes, for over four and one-half months after the November 15, 2007 samples were taken, and for at least two months after the execution of a federal criminal search

warrant by the EPA on January 29, 2008. The MDEQ did not shut down the Chem-Serve facility until March 26, 2008.

The facts supporting this Court's decision are:

1. Defendant was present at the facility on November 15, 2007 and January 29, 2008.

2. Defendant was aware by January 29, 2008, when the criminal search warrant was executed, that samples were taken, that corrosivity was detected, and that it was very likely that he would face criminal charges.

3. The barrels/drums/totes from which the November 15, 2007 samples were taken had been clearly marked, and thus would have been easy to identify.

4. The marked barrels at issue were still at Chem-Serve.

5. Defendant was aware of the criminal process regarding environmental criminal law, having previously pled guilty on behalf of another entity he owned, Dearborn Refining, to a state criminal misdemeanor charge. Defendant was represented at this earlier proceeding by his present attorney, Jeffrey Haynes.

6. Thus, Defendant had a lawyer-client relationship in 2003 with a criminal defense lawyer specializing in environmental criminal matters – Jeffrey Haynes – the same lawyer who filed and argued the instant motion.

Given the aforestated facts, Defendant was well-aware that environmental criminal investigations of Chem-Serve were escalating from the November 15, 2007 MDEQ visit (the third such visit) to Chem-Serve, that included an MDEQ criminal investigator and an EPA official, and the taking of the 14 samples, to the January 29-30, 2008 execution of the

3

criminal search warrant by the EPA at which additional samples were taken (not at issue in the instant motion).

Defendant had ample opportunity to consult with counsel and secure samples of his own to refute the corrosivity findings after the November 15, 2007 MDEQ/EPA visit and sampling. If his criminal liability was not fully apparent at that time, it certainly was from January 29 to March 26, 2008, – for the two months after the search warrant was executed – giving him ample time to consult with his environmental criminal defense counsel and take his own samples from the marked barrels/drums/totes on his premises, that had been sampled by the EPA on November 15, 2007.

Thus, although the EPA official who contracted with Weston Solutions, who in turn contracted with RTI Laboratories, should have created a contract that ensured the saving of its samples, there is no evidence that this mistake was made intentionally or in bad faith. Moreover, there is no evidence that the government was aware, at the time the samples were destroyed, that they were exculpatory in nature. Indeed, just the opposite. Finally, it is clear that Defendant was able in this case to obtain comparable evidence by reasonably available means, i.e., he could have sampled the clearly-marked barrels/drums/totes himself. *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1989)(holding that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process"); *California v. Trombetta*, 467 U.S. 479, 489 (1984)(holding that government's duty to preserve potentially exculpatory evidence limited to that which "possess[es] an exculpatory value that was apparent before the evidence was

4

destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.").[1]

The failure to request preservation of the samples in this case did not create a situation that calls for the Court to sanction the government for spoliation because Defendant Moloian, who was "lawyered up" for criminal environmental matters, was aware by January 29, 2008, that both the MDEQ and the EPA were going after him with criminal investigations, and that samples had been taken on November 15, 2007 that would likely become evidence – samples that he could easily track down by visible markings of barrels located on his Chem-Serve premises and duplicate for his own testing purposes

It is undisputed that the barrel contents at issue in the instant motion were in Defendant's possession, highlighted with markings by government inspectors. That the potentially incriminating environment situation had grown very serious to Defendant after its November 15, 2007 instant sampling, was made "loud and clear" after the execution of the January 29, 2008 criminal search warrant, and the additional samplings. The evidence at issue – the contents of the barrels sampled – were not destroyed by the government before Defendant had an opportunity to take samples. This situation is not similar to *O'Brien v. Donnnelly Enterprises*, 575 F.3d 567 (6th Cir. 2009), or *Nationwide v. Ford*, 174 F.2d 801

---

[1] The civil spoliation of evidence analysis, which Defendant argues should control the Court's resolution of this issue, dictates the same result. *See, e.g., Jennings v. Bradley*, 419 F. App'x 594, 599 (6th Cir. 2011)(noting that district courts have broad discretion in imposing sanctions based on spoliated evidence which requires a "three-prong showing: (1) the party having control over the evidence had a duty to preserve it; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense.").

(6th Cir. 1999). At a minimum, Defendant and his environmental criminal law specialist attorney had two months after the EPA search warrant execution to take samples from the marked barrels.

While the government may have acted negligently in failing to protect the November 15, 2007 samples, there is no basis to conclude that it acted in bad faith. Further, Defendant was able to secure the evidence through his own means.

And finally, there is no basis to support a claim that any exculpatory value of the evidence was apparent to the government before it was destroyed. Thus, the government did not violate Defendant's rights under *Youngblood* or *Trombetta* and the Court will not exclude evidence of the RTI test results or impose any other sanctions on the government.

Accordingly, Defendant's Motion for Sanctions for Government Spoliation of Evidence is **DENIED**.

**SO ORDERED**.

_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Copies to: 8-29-11